TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiffs, proposed FLSA Collective and potential Rule 23 Class*

**Case No. 19-cv-07710**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT COURT OF NEW YORK**
-------------------------------------------------------------- x

HUA XI, and
ZHONGMIN REN,
*on their own behalf and on behalf of others similarly situated*

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

                                        Plaintiffs,

                                        v.

MIRA SUSHI, INC.
    d/b/a Mira Sushi; and
STELLAR 153, INC.
    d/b/a Mira Sushi;
ANDY LEE,
PATRICIA NG,
XIAO YUN MEI, and
JINHEE CHO

**COMPLAINT**

                                        Defendants.
-------------------------------------------------------------- x

        Plaintiffs HUA XI, and ZHONGMIN REN (hereinafter referred to as Plaintiffs), on

behalf of themselves and others similarly situated, by and through their attorney, Troy Law,

PLLC, hereby bring this complaint against Defendants MIRA SUSHI, INC. d/b/a Mira Sushi;

and STELLAR 153, INC. d/b/a Mira Sushi; ANDY LEE, PATRICIA NG, XIAO YUN MEI, and

JINHEE CHO, and allege as follows:

## INTRODUCTION

        1.        This action is brought by the Plaintiffs HUA XI, and ZHONGMIN REN, on

behalf of themselves as well as other employees similarly situated, against the Defendants for

alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New

York Labor Law (NYLL), arising from Defendants' various willfully and unlawful employment policies, patterns and practices.

2.    Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern and practice of failing to pay its employees, including Plaintiffs, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.    Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage and unpaid overtime wages, (2) out of pocket expenses to delivery experts on the road, (3) liquidated damages, (4) prejudgment and post-judgement interest; and or (5) attorney's fees and cost.

4.    Plaintiffs further allege pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation and unpaid overtime compensation, (2) unpaid spread-of-hours premium, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) out of pocket expenses to delivery experts on the road, (6) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011

under NY Wage Theft Prevention Act, (7) 9% simple prejudgment interest provided by

NYLL, (8) post-judgment interest, and (9) attorney's fees and costs.

## JURISDICTION AND VENUE

5.     This Court has original federal question jurisdiction over this controversy

under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the

NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in the Southern District Court of New York pursuant to 28

U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts

and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.     From Spring of 2012 to on or about July 31, 2015 and again from June 06,

2016 to July 24, 2019, Plaintiff HUA XI was employed by Defendants to work as a

deliveryman at 46 West 22nd Street, New York, NY 10010.

## DEFENDANTS

### *Corporate Defendants*

8.     Defendant MIRA SUSHI, INC. d/b/a Mira Sushi is a domestic business

corporation organized under the laws of the State of New York with a principal address at 46

West 22nd Street, New York, NY 10010.

9.     MIRA SUSHI, INC. d/b/a Mira Sushi is a business engaged in interstate

commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

10.     MIRA SUSHI, INC. d/b/a Mira Sushi purchased and handled goods moved in

interstate commerce.

11.    Defendant STELLAR 153, INC. d/b/a Mira Sushi is a domestic business corporation organized under the laws of the State of New York with a principal address at 153-11 Union Tpke, Flushing, NY 11367.

12.    STELLAR 153, INC. d/b/a Mira Sushi is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

13.    STELLAR 153, INC. d/b/a Mira Sushi purchased and handled goods moved in interstate commerce.

*Owner/Operator Defendants*

14.    The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

15.    ANDY LEE known as "Boss" to Plaintiff and New York Alcoholic Beverage Control principal for MIRA SUSHI, INC. d/b/a Mira Sushi, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at MIRA SUSHI, INC. d/b/a Mira Sushi; and STELLAR 153, INC. d/b/a Mira Sushi.f

16.    ANDY LEE hired Plaintiff HUA XI.

17.    ANDY LEE paid Plaintiffs and other Mira Sushi employees at least some of the time.

18.    ANDY LEE fired Plaintiff HUA XI.

19.    ANDY LEE acted intentionally and maliciously and is an employer pursuant to

FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL
§ 2 and the regulations thereunder, and is jointly and severally liable with MIRA SUSHI,
INC. d/b/a Mira Sushi; and STELLAR 153, INC. d/b/a Mira Sushi.

20.     PATRICIA NG and New York Alcoholic Beverage Control principal for
MIRA SUSHI, INC. d/b/a Mira Sushi, (1) had the power to hire and fire employees, (2)
supervised and controlled employee work schedules or conditions of employment, (3)
determined the rate and method of payment, and (4) maintained employee records at MIRA
SUSHI, INC. d/b/a Mira Sushi; and STELLAR 153, INC. d/b/a Mira Sushi.f

21.     PATRICIA NG acted intentionally and maliciously and is an employer
pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §
791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with
MIRA SUSHI, INC. d/b/a Mira Sushi; and STELLAR 153, INC. d/b/a Mira Sushi.

22.     XIAO YUN MEI and New York Alcoholic Beverage Control principal for
STELLAR 153, INC. d/b/a Mira Sushi, (1) had the power to hire and fire employees, (2)
supervised and controlled employee work schedules or conditions of employment, (3)
determined the rate and method of payment, and (4) maintained employee records at MIRA
SUSHI, INC. d/b/a Mira Sushi; and STELLAR 153, INC. d/b/a Mira Sushi.f

23.     XIAO YUN MEI acted intentionally and maliciously and is an employer
pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §
791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with
MIRA SUSHI, INC. d/b/a Mira Sushi; and STELLAR 153, INC. d/b/a Mira Sushi.

24.     JINHEE CHO known as "Manager" for the entire restaurant and "Head Chef"
to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method

of payment, and (4) maintained employee records at MIRA SUSHI, INC. d/b/a Mira Sushi;

and STELLAR 153, INC. d/b/a Mira Sushi.f

25.    JINHEE CHO acted intentionally and maliciously and is an employer pursuant

to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2,

NYLL § 2 and the regulations thereunder, and is jointly and severally liable with MIRA

SUSHI, INC. d/b/a Mira Sushi; and STELLAR 153, INC. d/b/a Mira Sushi.


## STATEMENT OF FACTS

### Corporate Defendants MIRA SUSHI, INC. d/b/a Mira Sushi; and STELLAR 153, INC. d/b/a Mira Sushi Constitute an Enterprise

26.    Corporate Defendants MIRA SUSHI, INC. d/b/a Mira Sushi; and STELLAR

153, INC. d/b/a Mira Sushi are joint employers of Plaintiffs and constitute an enterprise as the

term is defined by 29 USC §203(r) insofar as they:

    a.  Do business as Mira Sushi at its two locations:

        i.  **46 West 22nd Street, New York, NY 10010**, and

        ii.  **153-11 Union Tpke, Flushing, NY 11367**,

    b.  share staff, including dispatching Mira Sushi employees to different stores on demand,

    c.  pay Plaintiffs for the work performed at the enterprise no matter what location they worked;

    d.  advertise the Corporate Defendants as an enterprise (see Exhibit 07 Mira Sushi Business Card and Exhibit 08 Mira Sushi Home Page), and

    e.  are otherwise engaged in related activities performed through unified operation

and/or common control for a common business purpose, and are co-owned by the same partners (namely ANDY LEE, among other partners).

27.    At all times relevant herein, MIRA SUSHI, INC. d/b/a Mira Sushi; and STELLAR 153, INC. d/b/a Mira Sushi was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

28.    At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by MIRA SUSHI, INC. d/b/a Mira Sushi; and STELLAR 153, INC. d/b/a Mira Sushi.

## Wage and Hour Claims

29.    There are more than twenty three (23) employees at the restaurant at any one time including three (3) deliverymen, three (3) employees at the front of the house, nine (9) waiters and bartenders, six (6) sushi bar chef, five (5) chefs, including the head chef, fry wok, one (1) food prep and other miscellaneous Spanish-speaking kitchen workers.

30.    Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

31.    Pursuant to NYCRR Part 146-2.2 and 29 USC § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

32.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

33.    At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

34.     While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

35.     Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

36.     Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

37.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

38.     Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

39.     Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

***Plaintiff HUA XI***

40.     From Spring of 2012 to on or about July 31, 2015 and again from June 06, 2016 to July 24, 2019, Plaintiff HUA XI was employed by Defendants to work as a deliveryman at 46 West 22nd Street, New York, NY 10010.

41.    Between on or about August 01, 2015 to June 05, 2016, Plaintiff HUA XI was off because of a work-related injury.

42.    From on or about January 01, 2012 to July 31, 2015, Plaintiff HUA XI's regular work schedule ran from:

   a.   11:30 to 14:30 and again from 17:00 to 22:00 for eight (8) hours a day on Mondays through Thursdays for four (4) "full" days and thirty two (32) hours per week;

   b.   11:30 to 14:30 and again from 17:00 to 23:00 for nine (9) hours a day for one "full" day on Fridays;

   c.   17:00 to 23:00 for six (6) hours for one "half" day on Saturdays.

43.    Thus, from on or about January 01, 2012 to July 31, 2015, Plaintiff HUA XI regularly worked for forty-seven (47) hours each week.

44.    From on or about August 01, 2015 to June 05, 2015, Plaintiff HUA XI did not work.

45.    From on or about June 06, 2015 to July 24, 2019, Plaintiff HUA XI's regular work schedule ran from:

   a.   11:30 to 14:30 and again from 17:00 to 22:00 for eight (8) hours a day on Mondays, Wednesdays, and Thursdays for three (3) "full" days and twenty four (24) hours a week; and

   b.   17:00 to 23:00 for six (6) hours for one (1) "half" day on Saturdays.

46.    Thus, from on or about June 06, 2015 to July 24, 2019, Plaintiff HUA XI regularly worked for a total of 30 hours each week.

47.    From on or about January 01, 2012 to July 31, 2015, Plaintiff HUA XI was

paid a flat compensation at a rate of one thousand two hundred dollars ($1200.00) per month, in cash.

48.    The wage is paid in semi-month intervals of Six Hundred Dollars ($600) in cash.

49.    From on or about August 01, 2015 to June 05, 2016, Plaintiff HUA XI did not work.

50.    At all relevant times after June 06, 2016 to July 2019, Plaintiff HUA XI was entitled to spread-of-hours for three (3) "full" days of pay, in addition to thirty (30) hours of hourly pay.

51.    In 2016, the applicable New York minimum wage is Nine Dollars ($9.00) per hour.

52.    As such, Plaintiff HUA XI was entitled to Two Hundred Ninety Seven Dollars ($297) per week in 2016.

53.    In 2017, the applicable New York minimum wage is Eleven Dollars ($11) an hour.

54.    As such, Plaintiff HUA XI was entitled to Three Hundred Sixty Three Dollars ($363) per week in 2017.

55.    In 2018, the applicable New York minimum wage is Thirteen Dollars ($13) an hour.

56.    As such, Plaintiff HUA XI was entitled to Four Hundred Twenty Nine Dollars ($429) per week in 2018.

57.    In 2019, the applicable New York minimum wage is Fifteen Dollars ($15) an hour.

58.     As such, Plaintiff HUA XI was entitled to Four Hundred Ninety Five Dollars ($495) per week in 2018.

59.     Further, in or about October or November 2018, the Thai Manager "NINI" promised to pay all Deliverymen Ten Dollars ($10) an hour.

60.     As such, Defendants owe Plaintiff and other Deliverymen half an hour (.5)'s pay per week.

61.     From on or about June 06, 2016 to July 20, 2016, Plaintiff HUA XI was paid a flat compensation at a rate of two hundred eighty dollars ($280.00) per week, in check.

62.     From on or about July 21, 2016 to December 31, 2017, Plaintiff HUA XI was paid a flat compensation at a rate of two hundred eighty-eight dollars ($288.00) per week, in check.

63.     From on or about January 01, 2018 to December 31, 2018, Plaintiff HUA XI was paid a flat compensation at a rate of two hundred fifty-seven dollars ($ 257.34) per week, in check.

64.     From on or about January 01, 2019 to July 24, 2019, Plaintiff HUA XI was paid a flat compensation at a rate of five hundred ninety-five dollars ($ 595.00) per every two weeks, in check.

65.     At all relevant times, Plaintiff HUA XI was not paid overtime pay for overtime work.

66.     At all relevant times, Plaintiff HUA XI was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

67.     Throughout his employment, Plaintiff HUA XI was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and

telephone number, employee's rate or rates of pay, any deductions made from employee's

wages, any allowances claimed as part of the minimum wage, and the employee's gross and

net wages for each pay day in Chinese, Plaintiff's native language.

68.     Throughout his employment, Plaintiff HUA XI was not compensated at least at

one-and-one-half his promised hourly wage for all hours worked above forty (40) in each

workweek.

69.     Throughout his employment, Plaintiff HUA XI was not compensated for New

York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his

promised rate.

70.     As part of Plaintiff's employment with Defendants, Plaintiff HUA XI was

required to bear the cost of the purchase of three (3)  electric bicycles at a cost of around One

Thousand Four Hundred Fifty Dollars ($1450) each plus two (2) batteries for Four Hundred

Dollars ($400) each for total of Five Thousand Two Hundred Fifty Dollars ($4,250).

71.     Plaintiff HUA XI was not reimbursed by Defendants for the cost of the

gasoline or the cost of maintaining the delivery vehicle for Defendants' benefit.

### *Plaintiff ZHONGMIN REN*

72.     From on or about August 01, 2015 to January 01, 2099, Plaintiff ZHONGMIN

REN was employed by Defendants to work as a deliveryman at 46 West 22nd Street, New

York, NY 10010.

73.     From on or about August 01, 2015 to June 05, 2016, Plaintiff ZHONGMIN

REN's regular work schedule ran from 11:30 to 14:30 and again from 17:00 to 22:00 for eight

(8) hours a day on Mondays through Thursdays; 11:30 to 14:30 and again from 17:00 to 23:00

for nine (9) hours a day on Fridays; 17:00 to 23:00 for six (6) hours on Saturdays for a total of

forty-seven (47) hours each week.

74.     From on or about June 06, 2015 to January 01, 2099, Plaintiff ZHONGMIN REN's regular work schedule ran from 11:30 to 14:30 and again from 17:00 to 22:00 for eight (8) hours a day on Mondays, t, and Thursdays; and 11:30 to 14:30 and again from 17:00 to 23:00 for nine (9) hours a day on Fridays; for a total of  hours each week.

75.     At all relevant times, Plaintiff ZHONGMIN REN did not have a fixed time for lunch or for dinner.

76.     From on or about August 01, 2015 to October 31, 2018, Plaintiff ZHONGMIN REN was paid an hourly rate of five dollars and fifty cents ($5.50) per hour.

77.     Later, during this same period, Plaintiff ZHONGMIN REN's hourly rate was raised to six dollars ($6.00).

78.     Even later, during this same period, the hourly rate was raised to seven dollars ($7.00).

79.     From on or about November 01, 2018 to July 24, 2019, Plaintiff ZHONGMIN REN was promised an hourly rate ten dollars ($10.00) per hour.

80.     However, upon information and belief, at all relevant times, not Plaintiff ZHONGMIN REN was not paid for all hours worked.

81.      At all relevant times, Plaintiff ZHONGMIN REN was not paid overtime pay for overtime work.

82.     At all relevant times, Plaintiff ZHONGMIN REN was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

83.     Throughout his employment, Plaintiff ZHONGMIN REN was not given a statement with his weekly payment reflecting employee's name, employer's name,

employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

84.    Throughout his employment, Plaintiff ZHONGMIN REN was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

85.    Throughout his employment, Plaintiff ZHONGMIN REN was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

86.    As part of Plaintiff's employment with Defendants, Plaintiff ZHONGMIN REN was required to bear the cost of the purchase of three (3) electric bicycles at a cost of One Thousand Seven Hundred Dollars ($1,700) each.

87.    Further, Plaintiff ZHONGMIN REN spends around one hundred dollars ($100) each month in maintaining the electric bicycles in usable condition.

88.    As part of Plaintiff's employment with Defendants, Plaintiff ZHONGMIN REN was required to bear the cost of the purchase of a motor vehicle and the costs of the gasoline.

89.    Plaintiff ZHONGMIN REN was not reimbursed by Defendants for the cost of the gasoline or the cost of maintaining the delivery vehicle for Defendants' benefit.

## COLLECTIVE ACTION ALLEGATIONS

90.    Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in

this case (the "Collective Action Period") and whom were not compensated at their promised

hourly rate for all hours worked and at one and one half times their promised work for all

hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

91.    Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil

Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by

Defendants on or after the date that is six years before the filing of the Complaint in this case

as defined herein (the "Class Period").

92.    All said persons, including Plaintiffs, are referred to herein as the "Class."

93.    The Class members are readily ascertainable. The number and identity of the

Class members are determinable from the records of Defendants. The hours assigned and

worked, the positions held, and the rate of pay for each Class Member is also determinable

from Defendants' records. For purpose of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided by

means permissible under said Fed. R. Civ. P. 23.

### *Numerosity*

94.    The proposed Class is so numerous that joinder of all members is

impracticable, and the disposition of their claims as a class will benefit the parties and the

Court. Although the precise number of such persons is unknown, and the facts on which the

calculation of the number is presently within the sole control of the Defendants, upon

information and belief, there are more than forty (40) members of the class.

### *Commonality*

95.    There are questions of law and fact common to the Class which predominate

over any questions affecting only individual class members, including:

        a.      Whether Defendant employed Plaintiffs and the Class within the meaning of the New York law;

        b.      Whether Plaintiffs and Class members are promised and not paid at their promised hourly wage;

        c.      Whether Plaintiff and Class members are not paid at least the hourly minimum wage for each hour worked;

        d.      Whether Plaintiffs and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

        e.      Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

        f.      Whether Plaintiff and Class members are required to provide and maintain tools of the trade on Defendants' behalf at their own cost;

        g.      Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

        h.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

        i.      Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

        j.      At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

        ***Typicality***

96.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

97.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

98.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible

for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

99.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

### STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage/ Unpaid Wages**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

100.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

101.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs in full, and the similarly situated collective action members, for some or all of the hours they worked.

102.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

103.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

### COUNT II.
### [Violation of New York Labor Law—Failure to Pay Minimum Wage/ Unpaid Wages Brought on behalf of Plaintiff and Rule 23 Class]

104.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

105.    At all relevant times, Plaintiffs are employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

106.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

107.    Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

108.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%)

after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiff and the FLSA Collective]

109.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

110.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

111.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

112.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

113.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

114.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

115.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the

requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

116.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

### COUNT IV.
**[Violation of New York Labor Law—Failure to Pay Overtime
Brought on behalf of Plaintiff and Rule 23 Class]**

117.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

118.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

119.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs and the class are entitled to.

120.    Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

121.    Defendants' failure to pay Plaintiffs was not in good faith.

### COUNT V.
**[Violation of New York Labor Law—Spread of Time Pay
Brought on behalf of Plaintiff and Rule 23 Class]**

122.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

123.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

124.    Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Keep Records
### Brought on behalf of Plaintiff and Rule 23 Class]

125.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

126.    Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYCRR § 146-2.1.

127.    As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

128.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

129.    Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff were not in good faith.

## COUNT VII.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
### Brought on behalf of Plaintiff and Rule 23 Class]

130.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

131.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day,

week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

132.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

133.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

134.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VIII.
### [Violation of New York Labor Law—Failure to Provide Wage Statements Brought on behalf of Plaintiff and Rule 23 Class]

135.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

136.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

137.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

138.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT IX.
**[Breach of Implied Contract for Reimbursement of all Costs and Expenses of Electric Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs Brought on behalf of the Plaintiff and the Class]**

139.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

140.    Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

141.    Based on his personal experience and available information, Plaintiffs can document actual "out-of-pocket" vehicle related expenses of their electricity delivery bicycle.

142.    The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiffs to maintain the delivery vehicle in working condition.

143.    Plaintiffs purchased, maintained and repaired the electric bicycle at their own expense.

144.    Plaintiffs performed these deliveries for the sole benefit of the Defendants.

145.    Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of gasoline and/or the maintenance of the vehicle.

146.    As a result of the afore-alleged conduct of the parties, an implied contract arose

between them the terms of which are that Plaintiffs would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

147.    Defendants never compensated Plaintiffs for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum under the afore-alleged facts.

148.    Defendants owe Plaintiffs their overdue costs of delivery vehicles, cost of batter change, if applicable, and maintenance of the bicycle.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting

them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

        d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

        e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

        f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

        g)      An award of out-of-pocket breach-of-contract delivery costs for motorcycle expenses incurred and expended by Plaintiff on Defendants' bequest and behalf;

        h)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

        i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

        j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's

wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

      k)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

      l)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

      m)      The cost and disbursements of this action;

      n)      An award of prejudgment and post-judgment fees;

      o)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

      p)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
August 21, 2019

                    TROY LAW, PLLC
                    *Attorneys for the Plaintiffs, proposed FLSA*
                    *Collective and potential Rule 23 Class*

                    /s/ John Troy
                    John Troy (JT0481)